There is a third case in the morning call. 2-08-11, 82 People's State of Illinois v. David Cuevas. On behalf of the people, John Teefee. On behalf of the employees, Darren Miller. May it please the court. Counsel. My name is John Teefee. I'm here on behalf of the state. As a preliminary matter, I would like to apologize. The defense counsel mentioned in his brief several times that the record did not contain the DVD of the facts in this case. And I would like to apologize that that was not contained in the record. The defense counsel actually said that I conveniently omitted that. It was not an intentional matter. I've been in contact with the Kendall County Assistant State's Attorney. And the DVD is in his possession. And if this court allows, following this hearing, when I return to Springfield, I would like to file a motion to supplement the record with that DVD. If this court would allow. But again, I apologize for the omission. It was not an intentional thing. I was not trying to hide anything from this court at all. This court, this case involves a statement of facts. It's just a four-page statement of facts that were agreed upon by the defense counsel and the state. And part of that was, and you'll see in the statement of facts, under number two, you can see that it says that the events that followed regarding the driving to detention and arrest of the defendant are accurately recorded on DVD that was part of this hearing. So the statement of facts actually is an inaccurate depiction of what was also recorded on that DVD. All right. Well, in response to your question, we're not usually in the business of allowing motions to be filed. Motions get filed, and we allow them or not or grant them or not. So, you know, certainly there's nothing to prohibit you from filing a motion to supplement the record. A motion will have its intended formalities, and there will be time to respond. But, you know, we're not going to sit here and tell you you can or can't file it. Right. Okay. But I understand your point. So the appropriate thing to do would be to file the motion, and then they get a chance to respond. And we'll see what shakes out of that. Okay. Thank you, Your Honor. But I appreciate your explanation. Anyway, so go ahead. Okay. Thank you. The first issue in this case, and this is an interesting case, and I'll briefly go through the facts of this case. The defendant was driving on the highway at 2.20 a.m. Earlier that evening, fairly close to where this defendant was driving, there had been an aggravated battery. The description of the assailant in the aggravated battery was Hispanic male wearing a white shirt. Officer Yackley, in this case, saw the defendant driving his vehicle. He pulled up behind the defendant. The defendant briefly crossed the middle line. The defendant was driving 27 miles per hour in a 20-mile-per-hour zone. At that time, the officer pulled up, Officer Yackley pulled up to the defendant's vehicle and noticed that the defendant was a Hispanic male wearing a white shirt. At that point, Yackley called for backup. When backup arrived, they performed a felony stop. The defendant performed that felony stop, asked the defendant to throw his keys out the window. The defendant did not do that. He quickly tried to get out of the vehicle. The police officer said, throw your keys out. At that point, Yackley observed the defendant slam his fingers in the door. The officers did have their guns drawn. That is something else the defense counsel said that I conveniently left out. Again, we're dealing with a four-page statement of facts. If I left that out, I apologize. But it is not something I was trying to trick this court into believing that guns were not drawn. They were drawn. Eventually, the defendant throws his keys out of the car, exits the vehicle, backs up to the police officers, is placed under arrest. The defendant is put in the police car. Subsequent to that arrest, the officers search the defendant's vehicle. In the vehicle, there's an African-American male and an African-American female. Both were asked to get out of the vehicle. And there was an open container of beer in the vehicle. There was not an actual open can, but there was an open container. Package. Package, correct. During all that, there was also, he actually also testified that he smelled alcohol on defendant's face, around defendant's face. After all this happens, they get a further description of the assailant in the aggravated battery. They find out the assailant in that battery had a button-up shirt. And so at that point, they dismiss this defendant as the assailant in the aggravated battery. So up to this point, what Officer Yacklin knows, he knows that defendant crossed the center line. He knows that he was speeding. He witnessed him shove his hand in the door. He smelled alcohol about the defendant's face. And he saw the open package of beer in the car. So there's no question, I don't think there's any dispute even by the court, that there was probable cause for the stop, correct? That is correct. The record shows that there, and even if you look at the order from the trial judge, he said that the initial stop was proper. So he goes on to say that there wasn't probable cause enough, I think is what he says, enough probable cause for an arrest. Is that what you're looking for? My first argument is that there was reasonable suspicion to administer the PBT test. After that, I'm arguing that there was probable cause to arrest the defendant for DUI. So my first argument is that there was reasonable suspicion for Officer Yacklin to administer the PBT test. And under that standard, an officer can administer this test if the officer, one, has reasonable suspicion to believe that the defendant is driving under the influence, and two, has consent. And the statement of facts do show, the undisputed statement of facts that were signed by defense counsel, show that the defendant did consent to the PBT test. In addition to that, what we have, and this is before, all this stuff that I'm going to list now is before Officer Yacklin asked the defendant to administer the PBT test. This is what Yacklin knew before that test was administered. He saw the defendant cross the yellow line, and again, under the circumstances, defense counsel argues that he was being, you know, this police officer was behind him, which was true. But nonetheless, this is part of the totality of the things that Yacklin observed during this process. He saw him cross the yellow line. He observed that he was speeding 27 in a 20-mile-per-hour zone. He saw the defendant shove his hand in the door. Again, guns were drawn. It's reasonable to believe the defendant probably was a little nervous, but that was part of the totality of the observations that Yacklin made. Yacklin also smelled alcohol about the defendant's face. After he smelled the alcohol in the defendant's face, he asked the defendant, he said, I smell alcohol, have you been drinking tonight? The defendant admitted. How does he get from the point at which he's determined that this is not the defendant saw it in the aggravated battery? The defendant's free to go, or should be free to go. Correct. What's the basis for continuing to inquire? I believe the basis for continuing to inquire was the things that I listed prior to crossing the center line, I think was an observation that he made, the open container of alcohol. I doubt all those. Do you think that's enough? I think that's enough to continue. I think a reasonable officer would believe that this defendant committed the offense at DUI, and I think that a reasonable, prudent officer would not allow a defendant under those circumstances to get back on the road and drive. I think that he has a duty to further pursue this. And the only question, and I still believe, I think he was pursuing further questioning, but I believe the record shows that after the handcuffs were taken off of the defendant, after he was, you know, after they realized that he was not the defendant in the aggravated battery, I believe that he was free to go. And I believe that the next line of questioning is after he smelled the alcohol, he asked him, have you been drinking tonight, which I think is a reasonable question. I think the officer has a duty to the public not to, if he has any sort of suspicion, not to allow this guy to get back on the road. The defendant admitted at that time that he had drank four to six beers, and he also admitted that he drank, that the beer that he was drinking was from the open container that was in the car. Well, he had a duty to society. Could he not have said to the other guy or woman, you take over the wheel. He needs to get in the driver's seat. I guess that that would be that would be something he could have done. I still believe that under the under this, the information that he knew, the circumstances that were available available to him, that he still had reasonable suspicion that the defendant was driving, was previously driving while under the influence of alcohol. So while he could have done that, I still believe he at that time, he still had reasonable suspicion that a crime had been committed. So he didn't unlawfully detain him or draw out the initial arrest. He had a basis for a second, for a subsequent arrest. Yes. And then a subsequent seizure, I believe. That's my argument. Yes. Other things that prior to the PBT test being administered, you also observed that defendants eyes were red and glassy. Defendants shorts were unzipped. At that time, he actually asked defending to go through some field sobriety tests. Defendant fell during the walk and turn test. He actually testified that he fell initially during the walk and turn test and subsequently did pass the walk and turn test. Defendant failed the one leg stand test. And based on all that, he actually asked defendant to take a PBT test, which defendant agreed and consented to take. And so based on that, those totality of the circumstances, all the observations that officer Yackley made in this case, I believe he had more than a reasonable suspicion to believe that defendant committed DUI and was driving under the influence. And that's why he administered the PBT test. And this court, in previous cases, has found far less than I believe the evidence in this is sufficient. Do you have a question, Your Honor? Okay. I'm sorry. Far less indicia of guilt in cases such as People v. Walter, where the officers, this court found that the officers had reasonable suspicion to administer a bloodshot and glassy, a strong odor of alcohol and defendant admitting in that case to drinking four beers. In this case, we have much more than that. We have a defendant who admitted to drinking four to six beers. His eyes were glassy and red. He had a smell of alcohol about him. His pants were unzipped. He failed at least one field sobriety test. I don't think the issue in this case is whether or not there are enough, there's a totality of the circumstances. I think the issue here, just so we don't lose sight of what we're looking at, is whether or not the second subsequent arrest was legal after he was free to go on the first one. I think that's what the issue is. Okay. And so then if I can live in my argument to what you just asked for, Your Honor, I believe that up to the point that he was free to go, before they took off the handcuffs, before Officer Yackley removed the handcuffs, after they realized that he was no longer the assailant in the aggravated battery, what Officer Yackley observed up to that point was the defendant crossing the center line, speeding 27 to 20 miles per hour zone, slamming his hand in the door, the smell of alcohol. But that's not what they stopped him for. They didn't stop him for the improper drive, did they? They did not, no. They did not. No, I believe they could have. But in this case, there was other circumstances. They stopped him based on the fact that he met the description of the assailant in the aggravated battery. That's why they stopped him. I believe that they could have stopped him for crossing the center line, and they could have stopped him for driving 27 to 20 miles per hour zone, but they did not. So, actually, he was never free to leave between these two stops, right? I believe he was free to leave. I believe after the handcuffs were taken off, I believe that he was free to leave. Everything you just described here was already known to the officers before they took the handcuffs off, right? That's true, yes. But how could he be free to leave? I believe that, could you rephrase your question? You listed all the things they knew, crossing the center line, speeding, smelling like alcohol, open package of liquor. They knew all that while they thought he might be the aggravated batterer. That's correct, yes. They determined he's not the aggravated batterer, but all this other information they still have. So, I mean, they didn't prolong the stop at all, improperly, to gather this other information. That would be your argument, not that he was free to leave. When was he free to leave, then? They knew all this information, and then how was he free to leave? I understand completely what you're saying, Justice O'Malley. It would be a very small window if he was free to leave, would be my argument. Second of all, if he was not free to leave, I believe there's two subsequent, you know, the first arrest was for the aggravated batterer, but that stopped when the handcuffs were taken off. And then immediately, it immediately became another seizure based on the reasonable suspicion. Well, I was kind of keying out that word immediately. See, if it's immediately, there ain't any intervening time the guy was free to leave, and there probably shouldn't have been, but go ahead. Yeah, okay. When either case, I believe that they did have reasonable suspicion to seize defendant under the circumstances and to later administer the PBT test. And in defense counsel's brief, he admits that if the PBT tests were allowed, that there was probable cause to arrest defendant. Right. But if you could, the issue is, after they decide he's not the perpetrator of the aggravated battery, to the very next question, have you been drinking? That's the issue. Correct. And I believe under the evidence that I've supplied and under the evidence in the statement of facts, the things that I've reiterated about the driving violations, about the hand in the door, the odor in the package, that that was enough reasonable suspicion for Yackley to believe that defendant had committed DUI. And all of that was previous to the stop. May I finish this thought, Your Honor? You certainly can. All that information available to Yackley was his knowledge during the initial stop that was found proper by the trial court. Thank you. All right, we don't have time for questions. We don't have time for rebuttal. Counsel, then counsel for the defense, please. Good morning, Your Honor. Counsel. Darren Miller on behalf of the defendant, David Kwetz. First, I would just like to state, as far as the DVD, I know you said we're not ruling on it now, but since it was mentioned, I would object to any supplementing of the record at this point. There's no motion before us yet. Correct. But I just wanted to point that out. You just want us to be prepared for your response. I'm just kind of responding to what counsel said. I guess since Your Honor is wanting to focus on what happened up until he was, the police had determined that he was no longer a suspect, I'll focus on that part of the argument. I think to understand this, first of all, you have to understand that from the defendant's point of view, what the officer also knew ultimately was the defendant was stopped, not in routine traffic stop, but with loaded weapons by numerous law officers. Now, okay, so he was a suspect in an aggravated battery. So we'll look at what the officer knew up until the point when he determined that he was no longer a suspect. The defendant had been speeding seven miles per hour over the speed limit. He had crossed over a dashed yellow line at a curb at 2.20 in the morning. It's debatable whether that's even in proper lane use. It's a dotted yellow line. And at any rate, he was pulled over at gunpoint by the officers. He did close his door on his hand, but again, the trial court listened to the evidence, and we're here to determine whether the ruling was manifestly erroneous. And certainly a rational finder of fact could conclude that closing the door on the hand was the result of being stopped for what, in the defendant's mind, would have been routine traffic violations at gunpoint by several officers. Obviously, that would be terrifying. And to just attribute that to being under the influence of alcohol rather than fear, I think that was up to the trial court. And I think that it's rational to determine that that was the result of the loaded weapons, which is why it did make a big deal in my brief of the fact that the state neglected to put the loaded weapons in its statement of facts or in its argument. Yet the officers saw an open package of beer, and then at some point, and it's not really even clear from the statement of facts exactly what point, he noticed there was an odor of alcohol from the defendant. And I believe that would be all the facts that the officer would have known before they concluded that he was no longer suspect on the aggravated battery. Did he not observe the bloodshot, glassy eyes, this odor of alcohol about his person at that point? None of that except perhaps the odor of alcohol. Like I said, it's not totally clear from the statement of facts. It could have been worded a little better, but assuming that it's chronological, it's possible that he may have noticed an odor of alcohol. But again, an odor of alcohol in and of itself, it's not illegal to drink and drive. It's illegal to drive under the influence of alcohol. But the issue at this point isn't whether he did anything illegal. Well, it's whether there's a reasonable and articulable basis to detain him. Right. Right. Well, in our position, that's just a mere hunch. Given the circumstances of this case, we want the officers… I mean, I can understand your argument if we were at the guilt phase of the trial saying the odor of alcohol isn't sufficient. But if we're at the reasonable basis to investigate further stage, I don't think it follows that it's a mere hunch. Well, if it's our position that it is a mere hunch, I mean, I don't know how to really counter that other than to say that it's not illegal to… The mere fact that someone smells of alcohol does not mean that they're under the influence or even tends to even prove that. It just means that they've had something to drink. But the mere fact that somebody has a strong odor of alcohol or an odor of alcohol about them allows you as a police – allows a police officer to go that one next step based upon reasonable articulable suspicion, correct? Like, have you been drinking or can you take some tests in addition with the… Well, I would say maybe in some circumstances, but when the basis of the stop had nothing to do with the defendant's driving, it was – there was no suspicion at all that the defendant was under the influence of alcohol until after – until after he was uncuffed and after it was determined that he was no longer a suspect. Let me ask you about that now. There was no suspicion he was drunk until after he was uncuffed? I mean, wasn't the guy breathing the smell of alcohol while he was handcuffed? Well, again, the facts I don't – are not totally clear as to chronologically when that happened. You make a point here to say in your brief with emphasis that even if the defendant could have been stopped for these reasons, however, he was not. What difference does that make? For which reasons? Well, the reasons of the speeding and proper lane usage. You list those things and say that even if he could have been stopped for those reasons, he was not. Well, to show that he wasn't otherwise being detained on the other traffic tickets. I mean, I guess in theory, the officer could have been writing traffic tickets at the time, but there's no evidence of that in the record. I guess the point I'm trying to make is that the reason we allow, or laws allow, these steps leading up to an arrest, you know, they can stop somebody and ask them questions. The question is how do the police come in contact with this fellow to notice the evidence of intoxication? If they come in contact with him because he committed a traffic violation, that's generally okay. If they happen to come in contact with him for some other reason, in this case, what everybody's calling a felony stop, I don't see what difference it makes. They got the guy behind the wheel of the car and they see what they see. I don't see what difference it makes. As long as there's a legal basis, not an unauthorized basis, for them to be as close to the guy as they are to make their observations. Well, I'm not sure that was my argument. Maybe my argument isn't being followed by you, but I thought that it was important just to point out that he wasn't on the traffic tickets, just to show that he wasn't continuing to be detained, that the basis for the stop had ended at that point. That was the purpose of the statement I made. If they had pulled him over for 27 and a 20, the officer has a conversation with him. He doesn't follow the directions as he was directed. No, throw the keys out. He doesn't do that. He notices an odor of alcohol and he sees an open package of beer in the vehicle. It would have been difficult for him to close the door on his hand, but just for the sake of argument, let's talk about the two traffic violations, the strong odor and open package of alcohol and failure to follow directions. Wouldn't that be enough for an officer to then say, sir, have you been drinking? If he'd been condemned, that in and of itself, well, I mean, obviously, I would say that it's unrelated to the stop. My point, if he stops him for a legitimate reason and apparently either it's stipulated to, the trial court found perfect basis to pull this vehicle over in the first place and no one's appealing that ruling. So here you have a police officer who sees two traffic violations, a failure to follow directions, detects a strong odor of alcohol and sees an open package of beer. If in the process of writing his tickets, would that just right there be enough to say, sir, have you been drinking? In that situation, if he's still being properly seized in pursuit of the traffic tickets, then yes. But when he's supposed to be released and shouldn't be seized and you keep asking questions. At that point, at the point at which the police officers would have released him, he's no longer, wrong shirt, whatever it was. He still knows two traffic violations, failure to follow directions, open package of beer and strong odor of alcohol. And isn't that enough? No, because at that point it should have been have a nice day, Mr. Defendant. He was no longer properly seized at that point. Mr. Miller, let me ask you this. Isn't this somewhat akin to a community caretaking stop where the officer walks up to a car and there's a guy sitting there and he has a flat tire and the cop goes up to help the guy with the flat tire and he goes up to the car and there's a strong odor of alcohol. The guy is sitting behind the wheel. I mean, he went up to him for a totally different reason than arresting him for DUI. Just like Mr. Yackley, Officer Yackley, went up to this guy for a totally different reason. There's no evidence that the officer was doing any community caretaking at all, I would say. Respectfully, from this record, that there is zero. No, I'm not saying there is a community caretaking. I'm just saying is it a community caretaking situation where you go up to help somebody and you find that there's something amiss as a result of you seeing a flat tire and you find something else that you make an arrest for? This is basically, I'm just saying, is it kind of the same thing? Well, no, because in that case he's free to leave. In a community caretaking situation, the defendant's free to leave. In this situation, he wasn't free to leave. I think opposing counsel is kind of trying to do some fancy talking as to whether he was free to leave, but I think clearly no rational person, or at least it's fair that a trial court could have determined that no rational person would have felt free to leave in those circumstances. So then it's your position that once the basis for the stop, the felony, quote-unquote felony stop, if you will, was over, even though this individual seemed to be under the influence of alcohol or there was a chance he was under the influence of alcohol, the officer should have just let him go? Well, I want to make it clear. It didn't seem that he was under the influence of alcohol, and that's our point, that it's a complete hunch. Just because someone smells of alcohol does not mean that they're under the influence of alcohol. Is your point that those factors are not enough for the police officer to ask additional questions, or no matter what he had found by that point, once the defendant is not the perpetrator of the aggravated battery, they have to just let him go and say, you have a nice night, sir. Well, I'm saying this situation, yes, I'm here. Well, that's an either-or question, and maybe I didn't phrase it well. I guess I was thinking about what you were saying about your hypothetical traffic. Okay, are you saying that this police officer, when he decides this is not the perpetrator of the aggravated battery, must let the defendant go, period, regardless of what information he has up to this point, or are you saying that the information he had up to this point was insufficient? Yes, the latter. The information he had up to that point was sufficient to detain him. I mean, I guess hypothetically he could have said you're free to go. Yeah, insufficient to detain him. I guess hypothetically he could have said, you're free to go. I want to make that clear, you're free to go, but I'd like to talk to you about, well, you drank alcohol, then if the defendant chose to stay, that's another scenario. But in this situation, he's being questioned while he's illegally seized, and that's our position, and that's what makes this improper as opposed to your hypothetical, when he's being detained pursuant to legitimate traffic stopping, and there just happens to be some questioning related to his driving while he's being processed for that. So your answer to her question is it doesn't matter how much information the police officer has, the basis for the initial seizure is over and he should leave. Well, no, if the officer would have had – if while he was – the defendant was properly seized for the initial detention of being a suspect of the aggravated battery, had the officer noticed that he had slurred speech and was – other reasons to show that he was actually under the influence of alcohol, not just that he may have smelled of alcohol, then that would have been enough to continue to detain him on a new suspicion. So your position is there were not reasonable articulable – there was not reasonable articulable suspicion to maintain him on a DUI. Correct. He was improperly seized. He should have been released. And the continued questioning of him was improper, and everything that followed from that would be the fruit of the poisonous tree. Okay. So if there are no other questions, I would ask that you affirm the child court's order. All right. Thank you, Counsel. And your butler, please. Real briefly, Your Honors, I think the statement of facts is pretty clear that the things that I discussed earlier were made – the observations by Yackley were made during the initial detention. Which observations? The observations of, obviously, the traffic violations, the observations of slamming the car door. The odor of alcohol was made prior to that, and you can see that. While clearing the vehicle, during the initial arrest, they found the open container of – the open package, excuse me, of alcohol. And it says, during this time – number 21 – it says, during this time, which means during the time that they were clearing the vehicle, the officer observed a strong odor of alcoholic beverages – beverage. And one of the things defense counsel talked about was that the smell of alcohol alone doesn't indicate that the defendant was driving under the influence. And I'm not arguing that. I'm arguing that the odor of alcohol gives the officer enough reasonable suspicion to believe that he could have been driving under the influence, and it gives him enough reasonable suspicion to keep asking further questions such as, were you drinking alcohol? Because in my opinion, and I'm pretty sure this is probably accurate, that if I drink one beer, my breath's going to smell pretty similar to when I drink ten beers. And I believe that a reasonable officer – if I were an officer in his position and I smell the odor of alcohol and observe the traffic violations and I see the open package of beer, a reasonable officer would have reasonable suspicion to ask further questions. And so the state would ask this court to reverse the trial court's order. Thank you, Your Honor. Okay, thank you both for your arguments. Madam, we take our advisement. Decision will be issued in due course. There will be a short recess before we convene for the next case. Thank you.